[No. 44894. En Banc. August 24, 1978.]

ELEANORE ELDREDGE, *Respondent*, v. KAMP KACHESS YOUTH SERVICES, INC., ET AL, *Appellants*.

*Abbott, Curtis, Galvin & Sandell,* by *James W. Abbott,* for appellants.

*John D. Thomas, Jr.,* for respondent.

STAFFORD, J.—Kamp Kachess Youth Services, Inc. (Kamp) appeals a judgment entered in an action brought to recover damages caused by three of its resident children. We affirm.

Kamp operates a group child care facility in Kittitas County. As part of its operations Kamp contracts with the Department of Social and Health Services (Department) to provide temporary care for children referred from the juvenile courts or from the Department. Kamp is not, however, contractually obligated to accept all State referrals. In fact, it can and does screen these referrals prior to acceptance.

All children in Kamp's care are "dependent" as defined by RCW 13.04.010. The Department pays Kamp $517.05 a month per child for the cost of care. Kamp receives a somewhat smaller monthly fee for private referrals.

On January 22, 1976, the Snohomish County Juvenile Court referred Mark Fournier to Kamp. Gregory Martini

was referred to it by the Lewis County Juvenile Court on February 6, 1976. Kamp screened and accepted both boys.

On February 14, 1976, Martini and Fournier ran away from Kamp's facility, stole an automobile and drove it to Seattle where the damaged vehicle was abandoned. Later, the two youths were apprehended by the Seattle police while in the process of committing a burglary. After 10 days in juvenile detention, the boys were returned to Kamp's facility on February 24, 1976. Although entitled to do so, Kamp apparently did not rescreen or decline the second referral despite its knowledge of the boys' prior car theft and burglary.

Kamp reassigned the boys to the same physical facility from which they had escaped. The facility has no physical restraints such as armed guards, fences, or barred windows to prevent escapes. These are either prohibited by statute or by departmental rule. In the absence of physical restraints, Kamp relies upon a "motivation" policy to prevent escapes. Under the policy, a resident's responsibility is increased and supervision is decreased for "good" behavior, whereas maximum supervision is imposed and responsibility is decreased for "bad" behavior, such as escape. There is no indication, however, that this "policy" was employed with the boys upon their return to Kamp's facility.

Only 3 or 4 days after their return, and barely 2 weeks after the initial escape, Martini, Fournier, and a third boy crawled through a window and escaped again. The three stole Eleanore Eldredge's vehicle and drove it to Yakima. While attempting to evade police apprehension, the boys wrecked the car and its contents.

Eldredge filed this negligence action against Kamp claiming $897.45 for damages to her vehicle and its contents. Kamp denied any negligence and affirmatively alleged (1) it was a contract agency of the Department; (2) its actions were in full compliance with applicable statutes and regulations governing group care facilities; and (3) the harm caused was unforeseeable.

Following trial, the trial court entered findings of fact and the following conclusion of law No. 1:[1]

That defendant Kamp Kachess Youth Service, Inc. was negligent in its conduct concerning the care and supervision of the two minor children, Mark Fournier and Gregory Martini.

That defendant Kamp Kachess Youth Services, Inc. was negligent when it accepted the two minor children back at its facility on February 24, 1976, after said children had run away and committed a violation of the state laws.

That it is the duty of Kamp Kachess Youth Services, Inc., when a child runs away from its facility and allegedly commits a crime or engages in criminal conduct, to refuse to accept said child back into its facility and if it does accept such child back into its facility it is absolutely liable for any damage caused by said child because of subsequent illegal acts. That defendant Kamp Kachess Youth Services, Inc. breached said duty.

Judgment was entered for Eldredge and Kamp sought direct review.

Kamp has not assigned error to any finding of fact. However, error is assigned to conclusion of law No. 1 and to the judgment. Three issues are raised: (1) Is Kamp entitled to sovereign immunity from orthodox tort liability? If not, (2) was the harm foreseeable? Finally, (3) can Kamp be held strictly liable for the subsequent illegal acts committed by the two boys after Kamp reaccepted them?

As a threshold matter, Kamp argues that it is entitled to immunity from traditional tort liability because it acts on behalf of the State to rehabilitate dependent juveniles. Kamp asserts that, as the State's agent, Kamp's decision to *reaccept* the two boys from the juvenile authorities and its subsequent decision to *reassign* them to the same physical facility are discretionary acts fully immunized from orthodox tort liability under *Evangelical United Brethren*

---

[1]Our review of the record makes clear that the trial court, in entering the second and third paragraphs of conclusion of law No. 1 intended to impose strict liability upon appellant for that damage occurring following its *reacceptance* of the boys.

*Church v. State,* 67 Wn.2d 246, 407 P.2d 440 (1965). We do not agree.

■ We deal initially with Kamp's decision to accept the State's referral of the two boys. In this regard, we note that Kamp does not operate solely on behalf of the State. It is a nonprofit, private institution which can and does accept private referrals. Moreover, it can and does screen all referrals prior to accepting children into its care. It is under no legal obligation to accept any State referral. If Kamp accepts a State referral, it receives a higher monthly fee for child care than it receives for private referrals. Under these facts, neither Kamp's decision to accept the State's initial referral *nor* its subsequent decision to *reaccept* them were acts to which sovereign immunity attached. Each decision was proprietary in nature, made while acting in a purely private capacity. Accordingly, Kamp is not entitled to sovereign immunity from orthodox tort liability for these decisions.

■ Next, Kamp argues that we must distinguish between the reacceptance decision and the subsequent reassignment decision when considering sovereign immunity. In this regard, Kamp points out that it is licensed by the State, that the State makes referrals to it, and ultimately the State transfers to it responsibility for the care and supervision of those dependent children Kamp accepts. It is here urged that once Kamp reaccepted the two boys, it *thereafter* was performing a function traditionally associated with State sovereignty. *See State ex rel. Richey v. Superior Court,* 59 Wn.2d 872, 371 P.2d 51 (1962). Thus the question arises: does Kamp's decision to *reassign* the two boys to the same physical facility, with no increased supervision, involve tortious activity or constitute the non-tortious act of governing? *See Evangelical United Brethren Church v. State, supra* at 253.

The decision to *reassign* the boys must be examined in light of four preliminary questions raised in *Evangelical Church* at page 255.

(1) Does the challenged act, omission, or decision necessarily involve a basic governmental policy, program, or objective? (2) Is the questioned act, omission, or decision essential to the realization or accomplishment of that policy, program, or objective as opposed to one which would not change the course or direction of the policy, program, or objective? (3) Does the act, omission, or decision require the exercise of basic policy evaluation, judgment, and expertise on the part of the governmental agency involved? (4) Does the governmental agency involved possess the requisite constitutional, statutory, or lawful authority and duty to do or make the challenged act, omission, or decision? If these preliminary questions can be clearly and unequivocally answered in the affirmative, then the challenged act, omission, or decision can, with a reasonable degree of assurance, be classified as a discretionary governmental process and nontortious, regardless of its unwisdom.

*See also Mason v. Bitton,* 85 Wn.2d 321, 328 n.2, 534 P.2d 1360 (1975).

Using the guidelines set forth in *Evangelical Church,* Kamp's decision to *reassign* the boys was not an act of governing. It was a mere ministerial act involving internal management to which no sovereign immunity attaches. The same type of internal management decision was at issue in *Evangelical Church* where we were concerned with the assignment of an inmate to the boiler room detail. We said in *Evangelical Church* at page 259:

> Both contentions involve acts or omissions that can properly be characterized as "operational," "ministerial," or "housekeeping" functions, as opposed to policy decisions embracing the exercise of purely executive or administrative discretion. Though the acts may be said to involve some discretion in varying degrees, the acts primarily involve internal management functions, and do not involve decisions which are essential to the realization or attainment of the basic policies and objectives of the delinquent youth program of the state.

In the instant case the second referral by juvenile authorities *to* Kamp did involve basic governmental policy.

But, this policy decision was made by the *juvenile authorities,* not by Kamp. Kamp's method of implementing the policy by reassigning the boys to the same physical facility without increased supervision was wholly ministerial, involving no basic governmental policy.

As we have indicated, neither the decision to reaccept nor to reassign the boys to the same facility without increased supervision was entitled to sovereign immunity. Accordingly, Kamp is fully subject to orthodox tort liability for the tortious consequences flowing from both decisions.

■ We do not reach the question whether Kamp is entitled to immunity as a public contractor. The argument was raised for the first time on appeal and will not be considered. *Martin v. Municipality of Metro. Seattle,* 90 Wn.2d 39, 42, 578 P.2d 525 (1978).

Kamp next contends the trial court erred by concluding that it was "negligent in its conduct concerning the care and supervision of the two minor children . . ." See conclusion of law No. 1 above. At issue here is Kamp's ministerial act of reassigning the boys to the same physical facility without increasing their supervision. Kamp argues it could not have foreseen that the decision would have precipitated the escape and ensuing damage. In short, it maintains the harm was unforeseeable as a matter of law. We disagree.

■ As the court's agent, the standard of care imposed upon Kamp is that of a parent. *See Evangelical United Brethren Church v. State, supra* at 260–61; *State ex rel. Richey v. Superior Court, supra* at 876. Parents are liable for the tortious conduct of their child if they know of the child's dangerous proclivity and fail to take reasonable measures to control that proclivity. *Norton v. Payne,* 154 Wash. 241, 244–48, 281 P. 991 (1929); Restatement (Second) of Torts § 316 (1965). *See also* Annot., *Parent's Liability for Injury or Damage Intentionally Inflicted by Minor Child,* 54 A.L.R.3d 974 (1973); Shong, *The Legal Responsibility of Parents for their Children's Delinquency,* 6 Fam. L.Q. 145 (Summer 1972).

The record indicates that the boys escaped the second time only 3 days after their return from an earlier escape in which a vehicle was stolen and damaged in a similar fashion. Escapes were quite common at Kamp's facility. The only security measure employed at Kamp's facility, before and after reacceptance of the juveniles, was an alarm on the residents' doors. The windows were not similarly equipped and bed checks were not made consistently. Moreover, the record is devoid of evidence indicating *any* increased supervision of the boys during the 3 days following their reacceptance. Further, there is no evidence that Kamp's "motivation policy" was employed in the instant setting.

Given the foregoing factual background, the trial court did not err in determining that Kamp reasonably could have or should have foreseen that the boys would again escape and steal and damage a vehicle. Unlike *Evangelical Church,* the evidence is not so remote as to warrant a determination, as a matter of law, that the harm was unforeseeable. Accordingly, we find no error.

Having determined that the trial court did not err in concluding that Kamp was negligent in its care and supervision of the two boys, the judgment for Eldredge based thereon was proper. The judgment having been properly entered on the basis of Kamp's negligence it is unnecessary to determine whether the trial court erred by holding Kamp strictly liable for having reaccepted the boys. See paragraphs two and three of conclusion of law No. 1.

We affirm.

WRIGHT, C.J., and ROSELLINI, HAMILTON, UTTER, BRACHTENBACH, HOROWITZ, DOLLIVER, and HICKS, JJ., concur.