[No. 52136-1.   En Banc.   May 15, 1986.]

THE STATE OF WASHINGTON, *Plaintiff,* v. GARY
HARRELL, *Defendant,* SKAGIT GROUP RANCH
HOMES, *Appellant,* SNOHOMISH COUNTY,
*Respondent.*

*Bannister, Bruhn & Clark,* by *James M. Roe* and *Patrick
M. Hayden,* for appellant.

*Seth R. Dawson, Prosecuting Attorney,* and *John T.
Dalton, Deputy,* for respondent.

*Kenneth O. Eikenberry, Attorney General,* and *Joan Caplan, Assistant,* amici curiae for appellant.

GOODLOE, J.—Skagit Group Ranch Homes (Group Homes) appeals a Snohomish County Superior Court order which assessed juvenile detention fees against it for the detention of Gary Harrell. We agree that the fees were not appropriately assessed and reverse the order.

The Snohomish County Superior Court, Juvenile Division, declared Harrell a dependent child on June 25, 1981, pursuant to RCW 13.34.030(2)(c). The court ordered that Harrell be taken from his parents' custody and placed in foster care under the supervision of the Department of Social and Health Services (DSHS).

An Everett DSHS caseworker referred Harrell to Group Homes for placement. Group Homes is a child welfare agency pursuant to RCW 74.15 and, specifically, a "group care facility". RCW 74.15.020(3)(a). Group Homes has a contract with DSHS to provide certain residential services for a basic monthly rate per child. Under the contract Group Homes provides 24-hour professional houseparent care, including counseling, food, shelter, clothing, household supplies, and other incidentals. Group Homes is a nonprofit business, and funds received from DSHS do not cover the costs of providing services. Private charitable contributions and governmental agency grants make up the difference.

On February 6, 1982, Harrell ran away from Group Homes. As required by its contract, Group Homes reported Harrell's absence to DSHS. Following the instruction of DSHS, Group Homes continued to keep a bed open for Harrell and DSHS continued to pay Group Homes during the boy's absence.

On March 2, 1982, the court reviewed and renewed its order of Harrell's dependency. The court order maintained DSHS as the "supervising agency". Clerk's Papers, at 20.

On March 4, 1982, Harrell was arrested and detained in the Snohomish County Juvenile Detention facility. Harrell remained in the detention facility from March 4 to March

12, 1982, when he was released to Group Homes. On March 31, 1982, Harrell entered a plea of guilty to second degree criminal trespass and third degree theft and was ordered by the court to serve detention for 8 days, with credit for the time previously served. In its order of disposition, the juvenile court assessed detention fees against Group Homes of $25 per day for the 8 days Harrell spent in the detention facility.

On August 24, 1982, the court again reviewed and renewed its order of Harrell's dependency. The court order again maintained DSHS as the "supervising agency". Clerk's Papers, at 22.

On September 9, 1983, Group Homes moved to vacate that portion of the court's disposition order which assessed $200 in detention fees against it. The court determined that pursuant to RCW 13.40.220 it had the authority to assess fees against Group Homes defining "them as being in custody of and responsible . . . to respond for the assessments." Report of Proceedings, at 44–45. The court modified the order to assess $10 per day for a total of $80. Group Homes appealed to the Court of Appeals, which administratively transferred the case to this court.

Two issues must be addressed. The first issue is whether detention fees may be assessed properly against Group Homes. The second issue is whether a challenge that the assessment statutes violate equal protection may be raised for the first time on appeal.

The court's disposition order and the court's order on the motion to vacate cited no statutory authority pursuant to which the detention fees were assessed against Group Homes. At the hearing on Group Homes' motion to vacate, two statutes, RCW 13.40.220 and RCW 13.16.085, were discussed. The County believed the court should be operating pursuant to RCW 13.40.220. Group Homes argued that under either statute detention fees could not be assessed. The court in its oral opinion stated it was acting pursuant to RCW 13.40.220 which fit the circumstances of the case. The parties address both statutes in their briefs. Although

not relied on by the trial court, we are also reviewing RCW 13.16.085 because an appellate court may sustain a trial court ruling on any correct ground, even though that ground was not considered by the trial court. *Reed v. Streib,* 65 Wn.2d 700, 709, 399 P.2d 338 (1965). We hold that neither RCW 13.40.220 nor RCW 13.16.085 are properly invoked under the circumstances of this case.

RCW 13.40.220 is a general statute which provides for orders for costs of support, treatment and confinement of children. It states:

> Whenever *legal custody of a child is vested in some-one other than his or her parents,* after due notice to the parents or other persons legally obligated to care for and support the child, and after a hearing, the court may order and decree that *the parent or other legally obligated person shall pay* in such a manner as the court may direct a reasonable sum representing *in whole or in part the costs of support, treatment, and confinement of the child* after the decree is entered. If the parent or other legally obligated person wilfully fails or refuses to pay such sum, the court may proceed against such person for contempt.

(Italics ours.) Paraphrased, RCW 13.40.220 provides that once legal custody of a child is vested in someone other than the child's parents, the parents or other legally obligated person may be held responsible for contribution toward the child's support, treatment and confinement. Here, custody of Harrell was vested in someone other than his parents. The critical inquiry then is whether Group Homes is "legally obligated".

The County argues that the contract between DSHS and Group Homes and the fact that Harrell lived at Group Homes for over 2 years show that Group Homes was a "legally obligated person". We disagree. The court orders of dependency placed Harrell in the custody of DSHS. The contract between Group Homes and DSHS made Group Homes contractually responsible to DSHS, but did not make Group Homes "legally obligated" within the meaning of the statute. Similarly, Harrell's tenure of stay at Group

Homes cannot make Group Homes legally obligated under the statute. The detention fees were not properly assessed against Group Homes on the basis of RCW 13.40.220.

RCW 13.16.085 is a specific statute which provides for recoupment of costs incurred for maintaining a child in juvenile detention. It states:

Financial responsibility for cost of detention. In any case in which a child under eighteen years of age has been placed in any *detention facility* under the jurisdiction of the juvenile court, the court may inquire into the facts concerning the necessity or propriety of such child's detention notwithstanding the fact that such child may not have been found to be either a dependent or a delinquent child.

The court may, either in the proceedings involving the question of dependency or delinquency of such child or in a separate proceeding, upon the parent or parents, guardian, or *other person having custody of said child* being duly summoned or voluntarily appearing, proceed to inquire into the necessity or propriety of such detention and into the ability of such person or persons to pay the cost of such detention.

If the court finds that such detention was necessary or proper for the welfare of the child or for the protection of the community, and if the court also finds the parent or parents, guardian, or *other person having the custody of such child* able to pay or contribute to the payment of the cost of such detention, the court may enter such order or decree as shall be equitable in the premises, and may enforce the same by execution or in any way a court of equity may enforce its decrees.

(Italics ours.)

Group Homes argues that RCW 13.16.085 does not apply because it merely obtained physical placement of Harrell and not *custody* as contemplated by the statute. We agree. RCW 13.04.011(5) states that for purposes of this title "'[c]ustodian' means that person who has the *legal* right to custody of the child." (Italics ours.) The court orders of dependency designated DSHS as the supervising agency to care for Harrell. DSHS became Harrell's custodian. The initial June 25, 1981 order, continued on March 2

and August 24, 1982, reads in part:

> *It is further ordered* that the child be placed:
> In foster care *under the supervision of Dept. of Social & Health Services* agency and said agency and/or the parents shall have full power to authorize and provide all necessary medical, dental or psychological care as recommended . . .

(Italics ours.)

> *It is further ordered* . . . [t]hat the following is the dispositional plan and dispositional order . . .
> 3. D.S.H.S. shall provide casework services, counseling for child, and referrals to community agencies as needed.

Clerk's Papers, at 29. *See* RCW 13.34.130(1)(b).

As Juvenile Court Rule 3.8(e) explains:

> A disposition which orders removal of the juvenile from his or her home shall have the effect of transferring *legal custody to the agency or custodian charged with the juvenile's care.* The transfer of legal custody shall give the legal custodian the following rights and duties:
> (1) To maintain the physical custody of the juvenile;
> (2) To protect, train, and discipline the juvenile;
> (3) To provide food, clothing, shelter, education as required by law, and routine medical care for a juvenile; and
> (4) To consent to emergency medical and surgical care and to sign a release of medical information to appropriate authorities, pursuant to law.
> The court may, in its disposition order, modify the rights and duties granted to the legal custodian as a result of the transfer of legal custody.

(Italics ours.) Group Homes did *not* have a legal right to custody of Harrell. While Group Homes had physical custody of Harrell pursuant to its contract with DSHS to provide housing, food, and some services, Group Homes did not have the array of rights and responsibilities of the legal custodian. DSHS by court order had legal custody of Harrell and retained ultimate custodial responsibility.

The County contends that *Eldredge v. Kamp Kachess Youth Servs., Inc.,* 90 Wn.2d 402, 583 P.2d 626 (1978) supports its position that Group Homes had "custody" of Har-

rell sufficient to assess detention fees against it pursuant to RCW 13.16.085. Kamp operated a group child care facility. As part of its operations Kamp contracted with DSHS to provide care for children *referred either from juvenile court or DSHS.* Two children escaped from Kamp and caused damage to property of a third party. Applying principles of tort law, this court found Kamp liable for damages. We held: "As the court's agent, the standard of care imposed upon Kamp is that of a parent." *Eldredge,* at 408.

*Eldredge* is distinguishable from the present facts in two ways. First, the court had directly assigned the two children to Kamp. *Eldredge,* at 403–04. The Snohomish County Juvenile Court directly assigned Harrell to DSHS. Group Homes is not named in the custody orders. Group Homes is not an agent of the court. Second, the issue in *Eldredge* involved imposition of a parental standard in a negligence action. Here, we are interpreting statutory terms for imposition of detention fees. The detention fees were not properly assessed against Group Homes on the basis of RCW 13.16.085.

Since we find that Group Homes is not liable for detention fees under either RCW 13.40.220 or RCW 13.16.085, we do not address appellant's equal protection challenge to these statutes. In any event, equal protection issues not considered by the trial court will not be considered on appeal. *Robinson v. Peterson,* 87 Wn.2d 665, 675, 555 P.2d 1348 (1976); *Aripa v. Department of Social & Health Servs.,* 91 Wn.2d 135, 141, 588 P.2d 185 (1978). The juvenile court's order assessing juvenile detention fees against Group Homes is reversed.

DOLLIVER, C.J., UTTER, DORE, PEARSON, ANDERSEN, CALLOW, and DURHAM, JJ., and CUNNINGHAM, J. Pro Tem., concur.