IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Dependency of<br><br>E.M., J.M., and I.M.,<br><br>                  Minor children. | No. 84605-1-I<br>(Consolidated with<br>84606-0-I and 84607-8-I)<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

COBURN, J. — J.M.L. entered an agreed order of dependency as to his three children. The order reflects that he invoked his Fifth Amendment right to remain silent as to allegations of domestic violence (DV), but acknowledges that the court could make negative inferences from his silence. He also indicated in the order that he did not object to the court reading the DV-related allegations and determine a basis for dependency therefrom. The Department of Children, Youth, and Families (Department) recommended services of a DV assessment and any recommended treatment. The parties agreed to continue that issue to a later "disposition" hearing. At that hearing, the Department submitted, without objection, a declaration from the assigned social worker, police reports, and notes from one of the children's therapists containing hearsay statements about a prior domestic violence incident. The court made DV-related findings in the disposition order and ordered that J.M.L. should complete a DV

assessment and follow its treatment recommendations. J.M.L. appeals the disposition order arguing the court applied an incorrect burden of proof and that the evidence was insufficient to support the trial court's findings. We affirm.

## FACTS

J.M.L. and V.W. live together and share three children, E.M., born in 2018, J.M., born in 2020, and I.M. born in 2021. In January 2020, J.M.L. was arrested after V.W. reported to Renton police that J.M.L. had "grabbed her" and "threw her around the house" before hitting her and throwing a large speaker at her face following an argument. The report noted that, E.M., then the couple's only child, was sleeping at the time. J.M.L. subsequently entered a stipulated order of continuance in which the State agreed to dismiss the charges without prejudice if J.M.L. had "no hostile contact with any intimate partner, family member, or household member" and did not violate any criminal laws.

In January 2021, V.W. reported to Seattle police that J.M.L. had again assaulted her in their home following an argument. V.W. reported that J.M.L. attempted to push her away during the argument and, in doing so, hit V.W. in the left eye with the back of his hand, leaving redness and swelling under V.W.'s left eye and cheekbone. V.W. claimed that both children were asleep throughout the incident and police response and did not witness the assault.

In February 2022, the Department filed a dependency petition for E.M., then two years old, J.M., then approximately 18 months old, and I.M., then approximately four months old. The petition alleged that the mother, V.W., and father, J.M.L., were unable to care for the children because of V.W.'s alcohol abuse and J.M.L. frequently leaving

2

the children alone with their intoxicated mother. In a subsequent agreed shelter care order, the parents agreed to follow the safety plan they developed with Department staff and the children were permitted to remain in the home. The plan required the mother to receive substance abuse treatment and required the father to take the children out of the home if the mother was intoxicated. In March 2022, the Department filed an amended petition, noting that J.M.L. had a pending assault in the fourth degree charge related to a domestic violence assault of V.W. The petition stated that J.M.L. had entered a stipulated order of continuance in which he agreed not to have "hostile contact" with V.W. through May 2023.

In May 2022, J.M.L. was arrested following another alleged assault on V.W. V.W. reported that the two were arguing and when J.M.L. left the apartment she hid his cell phone. When J.M.L. returned looking for the phone, he became angry at her and struck her in the face with an open hand. This left V.W. with an injury to her lip, swelling, and bleeding from her nose. The Department moved for the children to be placed out of the home and for monitored visitation for the parents. The Department argued that the children were being exposed to domestic violence and had been found alone with V.W. while she was intoxicated and passed out. The parties agreed to place the children with their maternal grandmother.

In August, the court entered an agreed order of dependency as to J.M.L. The court found the children dependent under RCW 13.34.030(6)(c). The order included agreed non-DV facts establishing dependency. J.M.L. did not admit to alleged DV, but agreed that the court could read specific DV allegations in the order in determining a basis for dependency. Specifically, the order stated:

I, [J.M.L.], acknowledge that the Department is asserting the following allegations (D(1)(i)-(iv)) and I have reviewed these allegations with the assistance of my attorney. Due to a potential criminal investigation, I do not admit any of these allegations and invoke my 5th Amendment right to remain silent. I believe that I am innocent of any potential criminal charges and I do not admit to acts that could constitute criminal charges pursuant to North Carolina v. Alford, 400 U.S. 25, 37, 91 S. Ct. 160 (1970). I understand and acknowledge that if this matter were to proceed to trial, considering the allegations against me, there is a strong likelihood that a finder of fact would find by a preponderance of evidence that my child is dependent within the meaning of RCW 13.34.030(5). This stipulation shall not be interpreted as an admission of fault or guilt in this or any other proceeding.

Given that this is a civil case, I understand that substantial Supreme Court doctrine notes that the exercise by a party of his or her fifth amendment privilege does not protect the invoking party from adverse inferences that may logically be drawn from its exercise. Baxter v. Palmigiano, 425 U.S. 308, 96 S. Ct. 1551, 47 L.Ed.2d 810 (1976); *King v. Olympic Pipe Line Co.,* 104 Wash.App. 338, 355–56, 16 P.3d 45 (2000) (citing *Ikeda v. Curtis*, 43 Wash.2d 449, 458, 261 P.2d 684 (1953)), review denied, 143 Wash.2d 1012, 21 P.3d 290 (2001). I do not object to the court reading the following allegations and determining a basis for dependency therefrom.

. . .

1. [J.M.L.] has been alleged to commit acts of domestic violence against [V.W.]
- i. [J.M.L.] was charged with Assault 4 DV against [V.W.] in January 2020 and May 2022. There is currently an active no contact order restricting [J.M.L.] from having contact with [V.W.].
- ii. DCYF received a report that following an argument between the parents there was broken glass on the floor and the children were observed running around barefoot.
- iii. The social worker has observed injuries on [V.W.]'s body, including a swollen lip, scab above her lip, a cut inside her lip, and swollen nose, that [V.W.] reported were caused by from [J.M.L.].
- iv. Following a reported DV incident in May 2022, [E.M.] told his therapist that his father hurt his mother and said "my dad was sitting on top of her" and "I was scared and sad." [V.W.] also reported a prior incident where [J.M.L.] strangled her while the children were home.

The court ordered the parents to participate in several agreed services. The

court "reserved pending dispositional hearing" the Department's request that J.M.L. participate in a DV assessment and participate in any recommended follow-up treatment. Though placement of the children out of the parents' home was not in dispute, a disposition hearing was scheduled for late September, but was eventually held in October.

At the October hearing, the Department submitted a declaration from the assigned Department social worker. In the declaration, the social worker described receiving a phone call from V.W. informing her of the May 2022 assault and describing her observations of injuries on V.W.'s face that V.W. told her had resulted from the assault. The declaration also included information that E.M. had reported to his therapist following the incident that it was "very scary" and said "my dad was sitting on top of [V.W.]." The social worker stated E.M. told his therapist that during the incident "I was scared and sad." Along with the declarations, the Department submitted J.M.L.'s stipulated continuance from his January 2020 arrest, which included the police report from the assault. The Department also submitted the arrest reports from the January 2021 and May 2022 incidents and notes from E.M.'s therapist.

J.M.L. did not object to the introduction of this evidence. J.M.L.'s attorney stated at the hearing that because it was a "disposition" hearing, "I'm not arguing that the Evidence Rules do apply here." J.M.L. did argue that the court should consider the reliability of the hearsay evidence presented by the Department but did not object to its admission. J.M.L. argued, and the trial court denied, that the Department was subject to a burden of proof higher than a preponderance of the evidence.

The trial court stated in its ruling "because of the status that we are in, I am

5

allowed to consider hearsay evidence." The trial court ultimately ruled

> based on the hearsay evidence that is before me today, I am finding by a preponderance of the evidence is the applicable standard. But, even if it is not, I am finding by clear, cogent, and convincing evidence that there is a nexus between the need for this service and the parental deficiency that the father has, that the children witnessing domestic violence in the household, and there is a need for a domestic violence evaluation and follow-up treatment.

The trial court subsequently entered an order finding that the children have been witnessing DV in the home; and that there is a nexus between J.M.L.'s parental deficiency and the need for the domestic violence assessment and recommended treatment.

J.M.L. appeals the October disposition order.

## DISCUSSION

### Mootness

The State argues that J.M.L.'s claims are moot because he has completed the DV assessment he now challenges on appeal and was granted derivative use immunity, preventing any possible violation of his Fifth Amendment rights. The court's Decker[1] immunity order prohibits the State and the Seattle City Attorney from "offering as evidence, in any criminal prosecution of the father, any statements made by the father during the course of these evaluations/assessments and/or during the course of treatment for offenses that occurred prior to the date of this order (use immunity)." J.M.L. argues that the case is not moot because, while the court's subsequent order granting derivative use immunity protects his right against self-incrimination, it does not relieve the burden on his right to avoid involuntary medical treatment and he still must

---

[1] State v. Decker, 68 Wn. App. 246, 842 P.2d 500 (1992).

engage in treatment recommendations.

We agree with J.M.L. that his claim is not moot, though not for all the reasons he asserts. A juvenile court may consider the parent's history of parenting and compliance with services to determine whether conditions are likely to be remedied in the near future. In re Dependency of J.C., 130 Wn.2d 418, 428, 924 P.2d 21 (1996). Although not an immediate effect, had J.M.L. refused to participate in the court ordered evaluation and any follow up treatment, it could be used against him in future proceedings in this or other dependency or termination proceedings. See In re Welfare of Angelo H., 124 Wn. App. 578, 587, 102 P.3d 822 (2004) (stating that services offered in prior dependencies are properly considered as factual evidence in a current dependency).

A matter is moot if this court cannot provide effective relief. In re Dependency of T.P., 12 Wn. App. 2d 538, 544, 458 P.3d 825 (2020) (citing In re Marriage of Horner, 151 Wn.2d 884, 891, 93 P.3d 124 (2004)). J.M.L. challenges the court's order that J.M.L. should obtain a DV assessment *and* follow recommended treatment. J.M.L. seeks a ruling that would, in effect, relieve him of having to comply with treatment recommendations. Accordingly, his appeal is not moot.

<u>Burden of Proof</u>

J.M.L. first argues that the trial court should have required the Department to prove that he required DV services by clear, cogent, and convincing evidence, rather than the preponderance of the evidence standard typically used in the setting of a dependency and disposition hearing. We disagree, but must clarify the distinction between a dependency fact-finding hearing and a disposition hearing given this case's

procedural history.

Both J.M.L. and the State refer to the hearing at issue as a "disposition hearing." The State relies on this hearing description for its assertion that the rules of evidence did not apply and thus did not exclude the hearsay evidence on which the Department's position was based. J.M.L. argues that there is no case law regarding the burden of proof applicable in determining what services may be ordered at such a hearing, and advocates for a clear, cogent, and convincing evidence standard. Both are incorrect.

The purpose of a disposition hearing is to determine the placement of the children. See RCW 13.34.130. The statute provides

> If, after a fact-finding hearing pursuant to RCW 13.34.110, it has been proven by a preponderance of the evidence that the child is dependent within the meaning of RCW 13.34.030 . . . and after a disposition hearing has been held pursuant to RCW 13.34.110, the court shall enter an order of disposition pursuant to this section.
>
> (1) the court shall order one of the following dispositions of the case:
>
> (a) Order a disposition that maintains the child in his or her home, which shall provide a program designed to alleviate the immediate danger to the child, to mitigate or cure any damage the child has already suffered, and to aid the parents so that the child will not be endangered in the future . . .
>
> (b)(i) Order the child to be removed from his or her home and into the custody, control, and care of a relative or other suitable person, the department, or agency responsible for supervision of the child's placement . . .

When the court has determined that children are dependent under RCW 13.34.030(6)(c), that means the children "ha[ve] no parent, guardian, or custodian capable of adequately caring for the child[ren], such that the child[ren] [are] in circumstances which constitute a danger of substantial damage to the child[ren]'s psychological or physical development." "After a court finds a child dependent by a preponderance of the evidence, the juvenile court may, 'after consideration of the social

8

study prepared pursuant to RCW 13.34.110' and a disposition hearing, order either that the child remain in the home or be placed outside of the home with a relative or other suitable person. RCW 13.34.130." In re Dependency of Z.A., No. 84122-0-I, slip op. at 25 (Wash. Dec. 26, 2023), https://www.courts.wa.gov/opinions/pdf/841220%20 orderandopin.pdf. To support placement of a child outside the home of the parents, "the Department has the burden to prove by clear, cogent, and convincing evidence that the [parent's] deficiencies jeopardize[] the children's rights to conditions of basic nurture, health, or safety in a circumstance where an in-home placement would pose a manifest danger to the children." Id. at 28 (analyzing the standard of proof for placement outside the home of the parents for a child who is found dependent under RCW 13.34.030(6)(c)).

At the dependency hearing in this case, the court had already ordered, with agreement of the parties, that the children should not be placed in the home but should instead be placed in the custody of a relative because there was no parent available to care for them. The only issue to be addressed at the "disposition hearing" following entry of the agreed dependency order was whether the trial court should order that J.M.L. undergo a DV assessment and follow treatment recommendations. Because the placement of the children was not at issue, the hearing was essentially a continuation of the dependency hearing to address the sole issue of whether the court found DV as a parental deficiency that warranted services of a DV assessment and treatment.

The parties do not escape the procedural constraints of a fact-finding hearing by simply referring to it as something else. The hearing at issue was, in effect, a continuation of the dependency fact-finding hearing and the rules of such a hearing

9

applied.[2]

The Washington Supreme Court has recognized that a "dependency proceeding and a termination proceeding have different objectives, statutory requirements, and safeguards." In re Dependency of Schermer, 161 Wn.2d 927, 943, 169 P.3d 452 (2007) (citing In re Dependency of Key, 119 Wn.2d 600, 609, 836 P.2d 200 (1992)). "The primary purpose of a dependency is to allow courts to order remedial measures to preserve and mend family ties." Id. (citing In re Dependency of T.L.G., 126 Wn. App. 181, 203, 108 P.3d 156 (2005)). A dependency proceeding is a "'preliminary, remedial, nonadversary proceeding' that does not permanently deprive a parent of any rights." Id. at 943-44 (quoting In re Dependency of A.W., 53 Wn. App. 22, 30, 765 P.2d 307 (1988)).

It is well settled that the burden of proof in a dependency hearing is preponderance of the evidence. RCW 13.34.110(1) instructs that "the petitioner shall have the burden of establishing by a preponderance of the evidence that the child is dependent within the meaning of RCW 13.34.030." Additionally, the Washington Supreme Court has recognized that a "dependency proceeding can be helpful and remedial in preserving and mending family ties because of the social services and disposition remedies that the State can provide. Permitting state intervention on a standard of proof lower than a clear, cogent, and convincing evidence standard is important in providing the necessary flexibility to the State in its attempts to both protect

---

[2] Notably, "[i]Immediately after the entry of the findings of fact, the court shall hold a disposition hearing, unless there is good cause for continuing the matter for up to fourteen days." RCW 13.34.110(4). The court initially set the "disposition" hearing well beyond 14 days from the dependency hearing, which was later again continued to October. We do not have the verbatim report of proceedings from the dependency hearing and the order does not reflect any finding of good cause for continuing a "disposition hearing."

the child and preserve the family." Schermer, 161 Wn.2d at 942-43 (citing In re Dependency of Chubb, 46 Wn. App. 530, 536-37, 731 P.2d 537 (1987)).

Regarding J.M.L.'s claims that due process requires a higher standard of proof because of the rights at stake in a dependency hearing, this court has previously rejected such claims. See Chubb, 46 Wn. App. at 530. In Chubb, this court examined and rejected the parent's argument that dependency proceedings should be evaluated under a higher burden of proof using the same three factors J.M.L. urges us to consider here. Id. at 533-34. This court held that because dependency is not permanent and does not necessarily ripen into a termination without further due process and because the State requires flexibility in attempting to both protect children from harm and preserve families, "balancing these concerns convinces us that for the initial dependency determination due process of law is not offended by proof of dependency by a preponderance of the evidence." Id. at 537.

In this case, the trial court correctly identified and applied the preponderance of the evidence standard in its order requiring J.M.L. to undergo a DV assessment and to comply with any recommended follow-up treatment.[3]

### Sufficiency of the Evidence

J.M.L. next argues that the evidence presented by the Department was insufficient to show that the father has a parental deficiency related to DV, therefore the court had no basis to require him to participate in a DV assessment and follow recommended treatment.

---

[3] In response to J.M.L.'s argument, the court explained that the case law was clear that a preponderance of the evidence standard applied, though stated, "even if I were to apply a clear and . . . cogent, and convincing evidence standard in this case, I believe that it would be met as well."

11

"The dependency statutes provide a broad framework from which the juvenile court may order services to facilitate parent-child reunification." Z.A., slip op. at 30 (quoting In re Dependency of D.C.-M., 162 Wn. App. 149, 158, 253 P.3d 112 (2011)). Once intervention into the family's life is authorized by the establishment of a dependency, the trial court can require a parent to participate in a service "when the circumstances in the record support the particular service." Id. (quoting In re Dependency of W.W.S., 14 Wn. App. 2d 342, 363, 469 P.3d 1190 (2020)). At the dependency hearing, parties may contest the underlying facts that are both the basis of the dependency finding and the basis for determining the services offered. The Department has a statutory obligation to provide all services ordered by the court, as well as "all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future." RCW 13.34.180(1)(d); See also In re Dependency of K.M.M., 186 Wn.2d 466, 479, 379 P.3d 75 (2016). The statute governing coordination of such services expressly provides that "this section . . . does not create judicial authority to order the provision of services except for the specific purpose of making reasonable efforts to remedy parental deficiencies identified in a dependency proceeding under this chapter." RCW 13.34.025(2)(d).

We review a trial court's decision to order a particular service for abuse of discretion. Z.A., slip op. at 31 (citing W.W.S., 14 Wn. App. 2d at 364). Discretion is abused when the trial court's decision "is manifestly unreasonable or based on untenable grounds or reasons." Id.

J.M.L. argues that the evidence presented at the October hearing was insufficient to support the trial court's order because the evidence before the trial court was a

declaration from a Department social worker and two police reports, which J.M.L. argues for the first time on appeal provide only hearsay statements. The rules of evidence shall apply at the fact-finding hearing. RCW 13.34.110(1). "A]lthough under ER 1101(c)(3) the rules of evidence do not apply at a disposition hearing in juvenile court, due process nonetheless requires that the disposition be based on reliable evidence." W.W.S., 14 Wn. App. 2d at 366. Though J.M.L. did not argue against the admissibility of the Department's documents, he did argue that the evidence was not reliable. However, J.M.L.'s only argument regarding reliability was that the court should not find it reliable because it would not otherwise be admissible at trial. J.M.L. did not make any substantive argument as to why the evidence presented was not reliable.

However, we need not restrict ourselves to consider only the evidence submitted at the October hearing. That is because the parties had earlier submitted an agreed dependency order. In that order, the parties agreed to several findings and the Department alleged that J.M.L. had committed DV. J.M.L. did not object to the court basing its dependency determination on the alleged DV facts in the order. Those allegations included the fact that J.M.L. had been arrested and charged with domestic violence assault, observations of injuries to V.W. following an assault by J.M.L., and E.M.'s statements to his therapist regarding the assault.

The findings of fact in the agreed dependency order were alone sufficient to support the court's later finding that the Department proved by a preponderance of the evidence that there was a nexus between J.M.L.'s parental deficiencies and the need to undergo a DV assessment and participate in any recommended treatment. Though the court did consider evidence submitted at the October hearing, to the extent that

evidence included the DV facts alleged in the agreed dependency order, J.M.L. had already waived any objection to the court's consideration of those facts.

"The appellate court may refuse to review any claim of error which was not raised in the trial court." RAP 2.5(a). The purpose of these requirements is to encourage parties to make timely objections and give the trial judge an opportunity to address an issue before it becomes an error on appeal. Wilcox v. Basehore, 187 Wn.2d 772, 788, 389 P.3d 531 (2017). Any error the court made regarding treating the October fact-finding hearing under the rules applicable to a disposition hearing was harmless. See In re Dependency of A.C., 74 Wn. App. 271, 273, 873 P.2d 535, 536 (1994). Moreover, we may affirm a trial court on any correct ground, even if that ground was not considered by the trial court. State v. Harrell, 105 Wn.2d 840, 842-43, 718 P.2d 797 (1986).

We decline J.M.L.'s invitation to revisit well-settled law that the proper standard of proof at a dependency hearing is by a preponderance. We hold that the court did not abuse its discretion in ordering J.M.L. to participate in a DV assessment and to comply with any recommended follow-up treatment.

Affirm.

Coburn, J.

WE CONCUR:

Birk, J.

Hazelrigg, A.C.J