[No. 3154–3. Division Three. October 4, 1979.]

*In the Matter of the Welfare of*
TAMMY M. YOUNG, ET AL.

*Mark E. Wilson* and *Jeffrey H. Hartje,* for appellant.

*Slade Gorton, Attorney General,* and *Christine Gregoire, Assistant,* for respondent.

ROE, J.—Cheryl Young Potter,[1] 22, was reared in an atmosphere of abuse and neglect. A long history of truancy, incorrigibility and running away from home culminated in 1971, when Cheryl was adjudicated dependent and made a temporary ward of the Spokane Juvenile Court. After various unsuccessful placements by the court, Cheryl was committed in 1972 to the Division of Institutions. Following her discharge in 1974, Cheryl lived with her grandfather and one Gerald Lillie, the putative father of her two children, Mae Lynn Young, born in 1974, and Tammy Young, born in 1976, of whom she was deprived in this action. Gerald Lillie disappeared in 1976, and his location is currently unknown.

Early in 1976, Cheryl was hospitalized for surgery and agreed to place Mae Lynn and Tammy in temporary foster care. Except for a 1–week visit with Cheryl, Tammy has remained in foster care. Mae Lynn returned to her mother in May of 1976, remaining until August of that year when she was again placed in foster care and subsequently adjudicated a dependent child. After Mae Lynn's return to foster care, Cheryl made one of several suicide attempts and entered the psychiatric unit of Sacred Heart Hospital. She left against medical advice and did not return for recommended counseling. ·

Cheryl has developed an adult criminal record which includes a federal conviction for obstruction of the mails,

---

[1]While hospitalized prior to her commitment to Purdy Treatment Center, and in custody under a bench warrant, Cheryl married Jack Potter. To date, they have not lived together as husband and wife, and Cheryl is presently seeking a divorce.

and convictions for resisting arrest, DWI, reckless driving and unlawful issuance of bank checks. She was sentenced and incarcerated at the Purdy Treatment Center for Women to serve a 5–year term for forgery.

The Office of the Attorney General filed a petition to permanently deprive Cheryl of the custody of her two children.[2] Following a hearing, the juvenile court held that Cheryl had abandoned Tammy, and that both Mae Lynn and Tammy were dependent children for lack of a parent willing or capable of exercising proper parental control. An order was entered permanently depriving Cheryl of the custody, care, and control of both children, and this appeal followed.

 Initially, the State argues that Cheryl failed to assign error to the findings of fact. Ordinarily, unchallenged findings become the established facts of the case, *In re Marriage of Verbin*, 92 Wn.2d 171, 595 P.2d 905 (1979), and appellate inquiry is limited to determining whether those findings support the trial court's conclusions of law and judgment. *State Bar Ass'n v. Great W. Union Fed. Sav. & Loan Ass'n*, 91 Wn.2d 48, 586 P.2d 870 (1978); *Hoke v. Stevens–Norton, Inc.*, 60 Wn.2d 775, 375 P.2d 743 (1962). In *Daughtry v. Jet Aeration Co.*, 91 Wn.2d 704, 710, 592 P.2d 631 (1979), the Supreme Court held that failure to assign error to findings of fact is not fatal to appellate review when the nature of the challenge is clear and the challenged findings are set forth in the appellant's brief. Although Cheryl assigned error only to the conclusions of law, she cites specific findings of fact in the texts of her arguments, and those references are sufficient under *Daughtry* to allow review of the merits.

 Evidence must be clear, cogent and convincing to support an order which permanently deprives a natural parent of the care, custody and control of minor children. *In re Sego*, 82 Wn.2d 736, 513 P.2d 831 (1973). On review, the appellate court must determine whether, in light of the

---

[2]RCW 13.04.060 (repealed July 1, 1979), now RCW 13.34.040.

degree of proof required, there is substantial evidence to support the trial court's decision.

> In this context, "substantial evidence" means clear, cogent and convincing evidence showing the necessity for permanent deprivation to be highly probable.

*In re Schulz,* 17 Wn. App. 134, 140, 561 P.2d 1122 (1977).

 The natural parent does not have an absolute right to the custody and care of a child, *In re Hagen,* 21 Wn. App. 169, 584 P.2d 446 (1978); in deprivation proceedings, the paramount consideration is the welfare of the child. *In re Russell,* 70 Wn.2d 451, 423 P.2d 640, *cert. denied,* 389 U.S. 874 (1967). The trial court is accorded broad discretion to determine the best interests of the child and its decision will receive great deference on review. *In re Tarango,* 23 Wn. App. 126, 595 P.2d 552 (1979). Here, the trial court determined that the best interests of Mae Lynn and Tammy required severance of Cheryl's parental rights. Cheryl has a depressive criminal record, both as a juvenile and as an adult. Expert testimony described her as emotionally unstable with suicidal tendencies. The trial court found that Cheryl presently lacks proper parenting skills and the prognosis is poor that she will develop necessary skills in time to benefit her children. At present she is unable to maintain a normal parent–child relationship, so May Lynn and Tammy face indefinite foster care.[3] This evidence indicates that the trial court acted within its discretion in ordering permanent deprivation.

Cheryl argues that the trial court erred in concluding that she had abandoned Tammy. Deprivation of parental rights may be ordered pursuant to a finding that a child has been abandoned; however, there must be clear, cogent and convincing evidence of the parent's intention to permanently relinquish all claims to the child. *In re Crozier,* 44 Wn.2d 901, 272 P.2d 136 (1954); *In re Hagen, supra.* It is not necessary to determine if there is the quantum of proof

---

[3]At oral argument the court was advised that Cheryl had been released on parole from prison but was in a county jail on a check charge.

to support abandonment since the trial court found Tammy dependent for lack of a parent capable of exercising proper parental control and this conclusion is well supported by the evidence.[4]

■ Cheryl next claims that the opinion testimony of Dr. Gipstein, a child psychiatrist, was both speculative and hearsay. No objection was made on hearsay grounds. To

---

[4]At the time of the hearing, the applicable statute was RCW 13.04.140 which read:

This chapter shall be liberally construed to the end that its purpose may be carried out, to wit: that the care, custody and discipline of a dependent or delinquent child as defined in this chapter shall approximate as nearly as may be that which should be given by its parents, and in all cases where it can be properly done, the dependent or delinquent child as defined in this chapter shall be placed in an approved family and may become a member of the family, by adoption or otherwise. No dependent or delinquent child as defined in this chapter shall be taken from the custody of its parent, parents or legal guardian, without the consent of such parent, parents or guardian, unless the court shall find such parent, parents or guardian is incapable or has failed or neglected to provide proper maintenance, training and education for said child; or unless said child has been tried on probation in said custody, and has failed to reform, or unless the court shall find that the welfare of said child requires that his custody shall be taken from said parent or guardian.

The mechanics of deprivation proceedings changed on July 1, 1978, when the above statute was repealed and RCW 13.34.180 became effective. To terminate a parent–child relationship, the statute now requires:

A petition seeking termination of a parent and child relationship may be filed in juvenile court. Such petition shall conform to the requirements of RCW 13.34.040 as now or hereafter amended and shall allege:

(1) That the child has been removed from the custody of the parent for a period of at least six months pursuant to a finding of dependency under RCW 13.34.030(2)(a) or (b); and

(2) That the conditions which led to the removal still persist; and

(3) That there is little likelihood that those conditions will be remedied so that the child can be returned to the parent in the near future; and

(4) That continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home; and

(5) That, if the finding of dependency has been pursuant to RCW 13.34-.030(2)(b), necessary services have been provided or offered to the parent to facilitate a reunion; and

(6) That the parent has substantially failed to accept such services; and

(7) That if the parent is subject to an order of disposition pursuant to the finding of dependency, the parent has substantially failed to comply with the order.

preserve error for consideration on appeal, the general rule requires that the alleged error first be brought to the trial court's attention at a time that will afford that court an opportunity to correct it. *State v. Wicke,* 91 Wn.2d 638, 591 P.2d 452 (1979).

■ Cheryl unsuccessfully moved to strike Dr. Gipstein's testimony about her parenting skills on the grounds that it was speculative. The trial court has wide discretion to determine the admissibility of opinion evidence. *Weber v. Biddle,* 72 Wn.2d 22, 431 P.2d 705 (1967). Once the basic requisite qualifications are established, any deficiencies in an expert's qualifications go to the weight, rather than the admissibility, of his testimony. *Larson v. Georgia Pac. Corp.,* 11 Wn. App. 557, 524 P.2d 251 (1974). We find no abuse of discretion.

Although Cheryl contends that Dr. Cressey's expert testimony also was speculative, she did not object at trial. Error raised for the first time on appeal need not be considered. *Eldredge v. Kamp Kachess Youth Servs., Inc.,* 90 Wn.2d 402, 583 P.2d 626 (1978).

Although termination of a parent–child relationship is a harsh and painful procedure to invoke against an irresponsible, misguided but nonetheless loving parent, it bears repeating that the interest of the child must be paramount. Although we have profound sympathy with the deprived background of the mother and recognize her earnest desire to have the children to give meaning to her life, yet the award of children is not a bonus for good intentions, nor are children removed as punishment, but we must be guided by the welfare of the children themselves. Mae Lynn and Tammy deserve a chance to develop into normal, well–adjusted adults; that chance can only begin in a stable and affectionate environment. Mae Lynn and Tammy are already bonded emotionally to their foster parents. Transitory life through various foster care placements, or a sudden uprooting when Cheryl is released from confinement at some indefinite future date may cause them irreversible

damage. Children are our only true natural resource, and we cannot afford to gamble needlessly with their futures.

Affirmed.

GREEN, C.J., and McINTURFF, J., concur.

Reconsideration denied October 25, 1979.

Review denied by Supreme Court January 11, 1980.