[No. 16566–6–I.   Division One.   February 9, 1987.]

*In the Matter of* CHENELLE ROBERTS.

THE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, *Respondent,* v. PAULA STRATMEYER, *Appellant.*

*Neil M. Fox* of *Washington Appellate Defender Association,* for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *Sarah Sappington, Assistant,* for respondent.

SCHOLFIELD, C.J.—Paula Stratmeyer appeals, challenging the sufficiency of the evidence in support of the trial court's order terminating her parental rights with regard to her daughter, Chenelle Roberts. We affirm.

## FACTS

Chenelle Roberts, born October 24, 1977, is an enrolled member of the Nooksack Indian tribe. Paula Stratmeyer is the child's natural mother. Her putative father's whereabouts are unknown.

Stratmeyer, who has been diagnosed as a paranoid schizophrenic, has a long history of mental illness as well as a long history of involvement with the Department of Social and Health Services (DSHS) Child Protective Services. Aside from the petition filed in the instant case on May 11, 1983, DSHS filed dependency petitions three times before, in October 1978, August 1979 and December 1980. Each time the petitions were dismissed, however, after Stratmeyer agreed to take the medication prescribed for her mental illness and to participate in various counseling programs.

On May 10, 1983, Ronald Stratmeyer had a seizure at home. When a fire department emergency unit arrived, they found Paula Stratmeyer hysterical, the residence dirty and unkempt, and Chenelle, age 5, locked out of the house. The child was covered with open lesions.

Chenelle was put in foster care and eventually placed with her maternal grandparents. Arrangements were made for weekly visits supervised by DSHS. Stratmeyer, however, often arrived late for these visits or not at all, usually with-

out an explanation. Between May 1983 and the time of trial, April 1985, Stratmeyer visited her daughter only 10 times. Chenelle was described as withdrawn and anxious during these visitations, in contrast to her otherwise outgoing and engaging behavior.

At trial, a clinical social worker, Stanley Case, who worked with Chenelle for 1 year in play therapy, testified that the child reenacted with her dolls feelings of abandonment, abuse and neglect. He opined that Chenelle's over-anxiousness and mild articulation disorder were a result of a "deprivational environment". Case testified that Chenelle's prognosis was "very good" if Stratmeyer's parental rights were terminated, but if not, there was a high risk of future emotional problems due to a combination of environmental stresses and Chenelle's biological vulnerability to mental illness. He concluded that the child would "be at extremely high risk if placed with her mother."

A DSHS caseworker with a background in Indian child welfare, Elaine Fiddler, also testified. Fiddler filed the termination petition because she felt Chenelle "was at extreme risk of psychological and emotional damage", and there was no way that Stratmeyer could provide for the child's emotional and physical needs. Fiddler testified there were no services reasonably available that would correct Stratmeyer's parenting deficiencies, and Chenelle would be "at extreme risk of neglect and emotional abuse" were she returned to her mother. Caseworkers Ernie Gowen and Chris Robinson testified that Stratmeyer lacked appropriate parenting skills.

Gretchen Winters, Chenelle's guardian ad litem, observed that the less the child saw her mother, the more she improved. Winters said Chenelle had told her repeatedly that she no longer wanted anything to do with her mother. Winters concluded that Stratmeyer's parental rights should be terminated.

Paula Stratmeyer testified on her own behalf. She said she was not having parenting problems, was "doing very well", and did not know why Chenelle had been taken from

her. She told the court that she had difficulty arranging visitations because of transportation problems and because she had no telephone.

The trial court found that Stratmeyer had substantially refused to take advantage of the services offered by DSHS, believing they were not needed, and that she demonstrated a lack of insight about the problems that existed when the child was removed from her home. The court found that Stratmeyer was unable to meet her child's needs or adequately parent her child on a consistent, ongoing basis, and that there was little likelihood that these conditions would be remedied in the near future. The court found further that Chenelle had a strong and immediate need for emotional safety, stability and consistency due to her unstable upbringing, and that these needs could not be met in her mother's home.

The court terminated Stratmeyer's parental rights, concluding that DSHS had established by clear, cogent and convincing evidence the requirements of RCW 13.34.180 and had proved beyond a reasonable doubt the requirements of the Indian Child Welfare Act of 1978 (ICWA).

### STANDARD OF REVIEW

Stratmeyer contends the State failed to prove its case beyond a reasonable doubt, as required by the ICWA. She also argues that the ICWA requires de novo review of the trial court proceedings, and she objects to hearsay evidence admitted below and to the reliability of the expert testimony.

■ The ICWA, 25 U.S.C. § 1901 *et seq.*, contains the minimum standards for the removal of Indian children from their families. 25 U.S.C. § 1902. Section 1914 provides that:

> Any Indian child who is the subject of any action for foster care placement or termination of parental rights under State law, any parent or Indian custodian from whose custody such child was removed, and the Indian child's tribe may petition any court of competent jurisdiction to invalidate such action upon a showing that

such action violated any provision of sections 1911, 1912, and 1913 of this title.

Stratmeyer maintains that this provision requires de novo appellate review of state termination proceedings. We disagree. The provision does no more than establish who has standing to challenge those proceedings.

Furthermore, de novo review of such matters is contrary to Washington law. *See Todd v. Superior Court,* 68 Wn.2d 587, 594–95, 414 P.2d 605 (1966). In fact, in deprivation proceedings, the trial court is accorded broad discretion, and its decision is entitled to great deference on review . *In re Tarango,* 23 Wn. App. 126, 595 P.2d 552 (1979); *see also In re Aschauer,* 93 Wn.2d 689, 695, 611 P.2d 1245 (1980). This deference to the trial court's advantage in having the witnesses before it is particularly important in deprivation proceedings. *In re Aschauer, supra.* Thus, the findings of the trial court will not be disturbed on appeal if they are supported by substantial evidence. *In re Sego,* 82 Wn.2d 736, 739, 513 P.2d 831 (1973).

Nevertheless, the State must prove its case by clear, cogent, and convincing evidence, the equivalent to saying that the ultimate facts in issue must be shown by the evidence to be "highly probable." *In re Sego, supra* at 739; RCW 13.34.190. RCW 13.34.180 sets forth six factors which the State must allege and prove in a deprivation hearing:

(1) That the child has been found to be a dependent child under RCW 13.34.030(2); and

(2) That the court has entered a dispositional order pursuant to RCW 13.34.130; and

(3) That the child has been removed or will, at the time of the hearing, have been removed from the custody of the parent for a period of at least six months pursuant to a finding of dependency under RCW 13.34.030(2); and

(4) That the services ordered under RCW 13.34.130 have been offered or provided and all necessary services,

reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been offered or provided; and

(5) That there is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future; and

(6) That continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home;

■ Additionally, where an Indian child is involved, the ICWA requires that:

No termination of parental rights may be ordered in such proceeding in the absence of a determination, supported by evidence *beyond a reasonable doubt,* including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child.

(Italics ours.) 25 U.S.C. § 1912(f). Stratmeyer appears to suggest that this requirement replaces or supersedes RCW 13.34.180 where an Indian child is the subject of a deprivation proceeding. We hold that where an Indian child is involved, the ICWA merely imposes an additional burden on the State to prove beyond a reasonable doubt that continued custody by the parent "is likely to result in serious emotional or physical damage to the child."

SUFFICIENCY OF THE EVIDENCE

In the case at bar, it is uncontested that Chenelle was declared a dependent child and placed in foster care more than 2 years prior to the hearing. This satisfies the first three conditions of RCW 13.34.180 as set forth above. The three remaining factors are supported by substantial evidence, even in light of the applicable standard of proof.

Relevant to factors 4 and 5, the trial court found that, between 1978 and 1981, DSHS offered homemaker services,

mental health counseling and crisis team intervention, parenting classes, an evaluation for Stratmeyer and her child, foster care and visitation. During the current dependency, the court found DSHS had offered or provided services including a psychological evaluation and mental health treatment for Stratmeyer, psychological evaluation and counseling for Chenelle, parenting classes, referrals to financial aid, visitation, help with transportation and foster care.

The court also found that Stratmeyer had a 10–year history of mental health problems, was diagnosed as a paranoid schizophrenic with a seizure disorder, and was prescribed medication to control her mental health problems. The court found further that, although Stratmeyer was now on medication and claimed that her problems had improved, she had a history of temporary improvement followed by noncompliance with mental health treatment and refusal to take her medications. The court determined that Stratmeyer's stated goals for future education and employment and plans to care for her child were vague and unrealistic in view of her mental health problems and past history of noncompliance.

■ All of these findings are supported by substantial evidence in the record, and since Stratmeyer has not assigned error to any of these findings of fact, they are verities on appeal. *Davis v. Department of Labor & Indus.*, 94 Wn.2d 119, 615 P.2d 1279 (1980). These findings of fact are sufficient alone to support the trial court's ultimate determination in findings of fact 1.8 and 1.14 that all reasonably available services capable of correcting her parental deficiencies within the foreseeable future had been offered or provided, and there was little likelihood that conditions would be remedied so that Chenelle could be returned to her mother in the near future.

The final factor the State had to prove, RCW 13.34-.180(6), states:

That continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home[.]

Both Case and Fiddler testified that Chenelle had a particularly great need for a stable, sensitive environment. Caseworkers Gowen and Robinson testified that Stratmeyer lacked appropriate parenting skills, and Fiddler was of the opinion that Stratmeyer could not provide even the minimal requirements for the child's individual needs. In short, there was substantial evidence to support the court's determination in finding of fact 1.19 that factor 6 had been proved by the State.

Finally, the court concluded that, in compliance with § 1912(f) of the ICWA, the State had proved beyond a reasonable doubt that Stratmeyer's continued custody would likely result in serious emotional and psychological damage to Chenelle. In support of that conclusion, Stanley Case testified that Chenelle would be "at extremely high risk" of having future emotional problems if placed with her mother. Likewise, Elaine Fiddler told the court that the child was at extreme risk of psychological and emotional damage were she not provided with a stable environment and noted the child's improvement during the dependency.

Fiddler opined that Chenelle would be at extreme risk of neglect and emotional abuse if returned to her mother and concluded that it would be in the child's best interest if the parental rights were terminated. The guardian ad litem also commented on Chenelle's dramatic improvement during foster care and likewise told the court that Stratmeyer's parental rights should be terminated.

Stratmeyer takes issue with the expert qualifications of these witnesses, particularly Stanley Case. She points to the requirement in 25 U.S.C. § 1912(f) that the determination to terminate parental rights be based upon "testimony of qualified expert witnesses".

The phrase "qualified expert witness" is meant to apply to expertise beyond the normal social worker qualifications. *In re Fisher,* 31 Wn. App. 550, 553, 643 P.2d 887 (1982). The use of the plural form, "expert witnesses," in the ICWA does not mean, however, that the testimony of more than one qualified expert witness is required. *D.A.W.*

*v. State,* 699 P.2d 340, 342 (Alaska 1985).

In *In re Fisher, supra,* one state witness had been employed as a caseworker supervisor for the foster care program in the Indian Center for 3 years. Another witness was a mental health counselor for the Puyallup tribe and had been employed as a foster care caseworker by the Seattle Indian Center for 2½ years. The court concluded that these were "qualified expert witnesses" for the purposes of the ICWA. *Fisher,* at 553.

Elaine Fiddler was well qualified within the meaning of the statute. She had attended numerous workshops on Indian child welfare, was a member of the local Indian Child Welfare Advisory Committee for Pierce County as well as the state committee. Both organizations were involved in drafting the ICWA. Fiddler's qualified opinion alone was sufficient to support the trial court's conclusion that the requirements of 25 U.S.C. § 1912(f) were proved beyond a reasonable doubt. *See In re Fisher, supra; D.A.W. v. State, supra.*

This objection, moreover, was not raised in the trial court below. Likewise, Stratmeyer argues on appeal for the first time that this court should not consider hearsay evidence admitted below and objects that the expert testimony was speculative and not grounded upon facts in evidence.

■ With few exceptions, error raised for the first time on appeal will not be considered. *Eldredge v. Kamp Kachess Youth Servs., Inc.,* 90 Wn.2d 402, 583 P.2d 626 (1978). This rule is equally applicable to appeals from deprivation proceedings. *See In re Young,* 24 Wn. App. 392, 396–97, 600 P.2d 1312 (1979). The court in *Young* refused to entertain appellant's objection that the expert testimony was both speculative and hearsay because the appellant did not object to the evidence at trial. *See also In re Fisher, supra* at 552 (citing RAP 2.5(a)), where the court excluded the appellant's first assignment of error for failure to raise an objection below.

We decline to reach the merits of these remaining arguments, which were not raised before the court below. The trial court's judgment is affirmed.

COLEMAN and PEKELIS, JJ., concur.