248 P.3d 145 (2011)
STATE of Washington, Respondent,
v.
I.K.C.,[1] Appellant.
No. 39519-3-II.
Court of Appeals of Washington, Division 2.
March 15, 2011.
*146 Thomas E. Weaver Jr., Attorney at Law, Bremerton, WA, for Appellant.
Todd Layton Dowell, Kitsap County Prosecutor's Office, Port Orchard, WA, for Respondent.
ARMSTRONG, J.
¶ 1 A juvenile court granted I.K.C. a deferred disposition under RCW 13.40.127 and imposed 15 days of detention as part of his community supervision order. I.K.C. appeals, arguing RCW 13.40.127 does not allow juvenile courts to impose detention for deferred dispositions. The parties agree that this appeal is technically moot because I.K.C. has already completed the detention term, but I.K.C. asks us to consider the issue as a matter of continuing and substantial public interest. We agree and hold that RCW 13.40.127 does not permit imposing detention for deferred dispositions.

FACTS
¶ 2 Following a fight at school between I.K.C., a 14 year-old boy, and N.W., a 15 year-old boy, the State charged I.K.C. with third degree assault. I.K.C. moved for a deferred disposition under RCW 13.40.127. The statute allows eligible juveniles[2] to defer the disposition of their case for up to one year while they are placed under community supervision. RCW 13.40.127(2), (5). The juvenile must stipulate to the facts in the police report and if he or she fails to comply with the terms of supervision, the stipulated facts are used to support a finding of guilt and impose a disposition. RCW 13.40.127(3). If the juvenile complies with the terms of supervision, the case is dismissed with prejudice at the end of the supervision period. RCW 13.40.127(9).
¶ 3 At a hearing on I.K.C.'s deferred disposition motion, the juvenile court asked I.K.C. if he understood that probation could involve up to 150 hours of community service, 30 days in detention, and restitution to the victim. I.K.C. responded that he understood and still wanted a deferred disposition. The court granted his motion.
¶ 4 The probation department then recommended, among other things, that the court impose 5 days of detention. The State recommended 20 days of detention. I.K.C.'s counsel argued that 20 days of detention was extreme for a juvenile with no prior criminal history and that RCW 13.40.127 does not permit courts to impose detention for a deferred disposition. The juvenile court stated that it thought recent case law allowed imposing detention for deferred dispositions and ordered 15 days of detention, with 4 days to be served in secured detention and the remaining 11 days to be served in jail alternatives, if I.K.C. qualified for the alternatives.[3] I.K.C. appeals, arguing RCW *147 13.40.127 does not allow juvenile courts to impose detention for a deferred disposition.

ANALYSIS

I. Moot Case
¶ 5 The parties agree this case is technically moot because I.K.C. has already served his detention term. But we may review a moot case if it presents issues of "`continuing and substantial public interest.'" Satomi Owners Ass'n v. Satomi, LLC, 167 Wash.2d 781, 796, 225 P.3d 213 (2009) (quoting In re Marriage of Horner, 151 Wash.2d 884, 891, 93 P.3d 124 (2004)). In deciding whether a case presents issues of continuing and substantial public interest, three factors are determinative: "`(1) whether the issue is of a public or private nature; (2) whether an authoritative determination is desirable to provide future guidance to public officers; and (3) whether the issue is likely to recur.'" Satomi, 167 Wash.2d at 796, 225 P.3d 213 (quoting Horner, 151 Wash.2d at 892, 93 P.3d 124). We may also consider "`the likelihood that the issue will escape review because the facts of the controversy are short-lived.'" Satomi, 167 Wash.2d at 796, 225 P.3d 213 (quoting Horner, 151 Wash.2d at 892, 93 P.3d 124).
¶ 6 The issue of whether a juvenile court can impose detention under the deferred disposition statute, RCW 13.40.127, meets these criteria. It is public in nature and is likely to recur because the probation department stated at I.K.C.'s hearing that its "standard recommendation" for deferred dispositions includes five days of detention. Report of Proceedings at 10. Also, I.K.C. has provided records for all Kitsap County deferred dispositions between January 1, 2006, and December 31, 2009, and those records show that out of 510 deferred dispositions, 217 juveniles received some detention time. Because this issue arises fairly frequently, an authoritative determination on whether imposing detention is lawful under RCW 13.40.127 is desirable to provide guidance to juvenile courts. Finally, the majority of juveniles that received detention time for deferred dispositions in Kitsap County received between 1 and 5 days of detention, and I.K.C. received 15 days of detention. Because the facts of the controversy are short-lived, this issue will continue to escape review if we decline to consider it. Thus, this case presents an issue of continuing and substantial public interest that we should consider. See Satomi, 167 Wash.2d at 796, 225 P.3d 213.
¶ 7 The State argues, however, that it would be inequitable to allow I.K.C. to contest the validity of his detention term under the circumstances of this case. First, the State argues that I.K.C.'s objection was untimely because he was aware that the State intended to recommend detention and understood that detention was a possible consequence, but waited until after the court granted his deferred disposition motion to object to the detention recommendation. Generally, an objection is timely when the alleged error is brought to the trial court's attention at a time when the court has an opportunity to correct it. See Smith v. Shannon, 100 Wash.2d 26, 37-38, 666 P.2d 351 (1983); In re Welfare of Young, 24 Wash. App. 392, 396-97, 600 P.2d 1312 (1979). Here, I.K.C. waited to object to the State's recommendation of 20 days' detention until the State actually made the recommendation to the juvenile court. He also objected before the court made its final ruling on the conditions of his community supervision order. Thus, I.K.C. properly brought the alleged error to the court's attention at a time when the court had an opportunity to correct it. See Smith, 100 Wash.2d at 37-38, 666 P.2d 351; Young, 24 Wash.App. at 397, 600 P.2d 1312. Whether he could have potentially objected earlier in the hearing does not render this objection untimely.
¶ 8 The State also argues that it could have charged I.K.C. with second degree assault, thereby rendering him ineligible for a deferred disposition, but it agreed to charge a lesser crime and not object to a deferred disposition. Because I.K.C. received the benefit of his bargain with the State, the State argues we should decline to review the validity of his detention term. But "a defendant cannot, by way of a negotiated plea agreement, agree to a sentence in excess of that authorized by statute and thus cannot waive a challenge to such a sentence." *148 In re Pers. Restraint of Goodwin, 146 Wash.2d 861, 872, 50 P.3d 618 (2002). The same principle applies here: if a juvenile court cannot impose detention under the deferred disposition statute, RCW 13.40.127, then I.K.C. could not agree to the unlawful detention term or waive his right to challenge it. For these reasons, we will review this moot case to determine whether a juvenile court can impose detention under RCW 13.40.127.

II. Confinement Not Authorized For Deferred Dispositions

A. Standard of Review

¶ 9 Statutory interpretation is a question of law that we review de novo. State v. Watson, 146 Wash.2d 947, 954, 51 P.3d 66 (2002). When interpreting a statute, our fundamental objective is to ascertain the legislature's intent. Watson, 146 Wash.2d at 954, 51 P.3d 66. To determine legislative intent, we first look to the statutory language. Watson, 146 Wash.2d at 954, 51 P.3d 66. If a statute's language is clear, we derive its meaning from that plain language. Watson, 146 Wash.2d at 954, 51 P.3d 66.

B. Deferred Disposition Statute and Definitions

¶ 10 The deferred disposition statute, RCW 13.40.127(5), provides: "Any juvenile granted a deferral of disposition under this section shall be placed under community supervision. The court may impose any conditions of supervision that it deems appropriate including posting a probation bond." (Emphasis added.) In State v. J.A., 105 Wash.App. 879, 887, 20 P.3d 487 (2001), Division One of our court interpreted this statute as providing a "broad grant of authority" that allows juvenile courts to impose any conditions the court deems appropriate:
[S]ubsection (5) [of RCW 13.40.127] sets a foundation for judicial discretion by allowing a juvenile court to impose "any conditions" of a deferred disposition that it deems appropriate. This broad grant of authority acknowledges that the circumstances of individual juveniles are unique and that courts must have discretion to fashion orders that will [a]ffect both accountability and rehabilitation.
¶ 11 Division Three of this court relied on J.A. in State v. Lown, 116 Wash.App. 402, 410-11, 66 P.3d 660 (2003), overruled in part on other grounds by State v. Ramer, 151 Wash.2d 106, 86 P.3d 132 (2004), when considering whether a juvenile court exceeded its authority by imposing 10 days of confinement as punishment for a juvenile who violated the terms of her community supervision. Although the Lown court ultimately held that the State did not have standing to contest confinement, because the juvenile was the only aggrieved party and did not contest confinement, the court also opined:
The juvenile justice act does not explicitly authorize the particular sanction the commissioner imposed. But the court may impose "any conditions of supervision that it deems appropriate." RCW 13.40.127(5); J.A., 105 Wash.App. at 887 [20 P.3d 487]. This gives the juvenile court broad authority to craft an appropriate sanction.
Lown, 116 Wash.App. at 410-11, 66 P.3d 660.
¶ 12 These cases are distinguishable because the present issue was not squarely before either court.[4] Upon closer examination, it is clear that the plain language of the deferred disposition statute does not allow a juvenile court to impose any conditions that the court deems appropriate. Rather, the statute allows the court to place the juvenile under "community supervision" and impose "any conditions of supervision that it deems appropriate." RCW 13.40.127(5). The term "community supervision" is defined by statute and specifically lists the conditions that a juvenile court may include:

*149 Community supervision is an individualized program comprised of one or more of the following: (a) Community-based sanctions; (b) Community-based rehabilitation; (c) Monitoring and reporting requirements; (d) Posting of a probation bond.
RCW 13.40.020(4)(a)-(d). "Community-based sanctions" include a fine of $500 or less and up to 150 hours of community service. RCW 13.40.020(2)(a)-(b). "Community-based rehabilitation" includes education and treatment programs:
Employment; attendance of information classes; literacy classes; counseling, outpatient substance abuse treatment programs, outpatient mental health programs, anger management classes, education or outpatient treatment programs to prevent animal cruelty, or other services; or attendance at school or other educational programs appropriate for the juvenile as determined by the school district.
RCW 13.40.020(1). "Monitoring and reporting requirements" include curfews and similar restrictions on the juvenile's movement but specifically excludes confinement:
Curfews; requirements to remain at home, school, work, or court-ordered treatment programs during specified hours; restrictions from leaving or entering specified geographical areas; requirements to report to the probation officer as directed and to remain under the probation officer's supervision; and other conditions or limitations as the court may require which may not include confinement.

RCW 13.40.020(19) (emphasis added). "Confinement" includes "physical custody in a detention facility." RCW 13.40.020(5).
¶ 13 Thus, a juvenile court can choose from a broad range of conditions when crafting an individualized program to suit the needs of a particular juvenile, including community-based sanctions, community-based rehabilitation, monitoring and reporting requirements, and posting a probation bond. RCW 13.40.020(4). Confinement is conspicuously absent from this list and is expressly disallowed under "[m]onitoring and reporting requirements." See RCW 13.40.020(4), (5), (19). The plain language of RCW 13.40.127(5) and RCW 13.40.020 demonstrates that the legislature did not intend to allow juvenile courts to impose confinement as a condition of community supervision for deferred dispositions. See Watson, 146 Wash.2d at 954, 51 P.3d 66.
¶ 14 The State argues, however, that the statutory definition of "community supervision" does not limit a juvenile court's discretion in deferred disposition cases because RCW 13.40.127(5) states that a juvenile court "may impose any conditions of supervision that it deems appropriate," not "any conditions of community supervision that it deems appropriate." Br. of Resp't at 12-13. We disagree. It is clear from the context of the entire provision that the statute is specifically referring to community supervision, not some other, undefined type of supervision: RCW 13.40.127(5) first requires that a juvenile who has been granted a deferred disposition "be placed under community supervision," and then allows a juvenile court to "impose any conditions of supervision that it deems appropriate." Additionally, the statutory definition of "community supervision" specifically references deferred disposition orders: "`Community supervision' means an order of disposition by the court of an adjudicated youth not committed to the department [of social and health services] ... or an order granting a deferred disposition." RCW 13.40.020(4) (emphasis added).
¶ 15 Accordingly, we hold that the plain language of RCW 13.40.127 does not allow juvenile courts to impose detention as a condition of community supervision for deferred dispositions. But because I.K.C. has already served his detention term, we need not vacate the term or remand to the juvenile court for further proceedings.
We concur: PENOYAR, C.J., and QUINN-BRINTNALL, J.
NOTES
[1] Because the defendant is a juvenile, we find that some anonymity is appropriate. Accordingly, we use initials to identify him.
[2] "A juvenile is eligible for deferred disposition unless he or she: (a) Is charged with a sex or violent offense; (b) Has a criminal history which includes any felony; (c) Has a prior deferred disposition or deferred adjudication; or (d) Has two or more adjudications." RCW 13.40.127(1)(a)-(d).
[3] The juvenile court also ordered 12 months of community supervision, 32 hours of community service, and restitution to N.W.
[4] The issue in J.A. was whether RCW 13.40.127(7) grants a juvenile court discretion to determine what constitutes a lack of compliance with the conditions of community supervision. J.A., 105 Wash.App. at 887-88, 20 P.3d 487. The issue in Lown was whether a juvenile court could impose detention as punishment for violating the conditions of community supervision where the juvenile suggested and agreed to detention as an appropriate punishment, not whether the court could have initially imposed detention as a condition of community supervision. Lown, 116 Wash.App. at 410-11, 66 P.3d 660.