# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

2017 JAN -9 AM 9: 5

In the Matter of the Dependency of: )
)
J.O. ) No. 74877-7-I
DOB: 10/17/2013, ) (consolidated with 74878-5-I)
)
J.O. ) DIVISION ONE
DOB: 10/17/2013, )
)
          Minor children. )
)
STATE OF WASHINGTON, ) UNPUBLISHED OPINION
DEPARTMENT OF SOCIAL AND )
HEALTH SERVICES, ) FILED: January 9, 2017
)
          Respondent, )
)
      v. )
)
SONIA A. OROZCO-SALGADO, )
)
          Appellant. )
_____ )

BECKER, J. — Sonia Orozco-Salgado[1] appeals the trial court's order terminating her parental rights to her three-year-old twin sons, J.O. and J.O. Orozco contends the State failed to prove that all necessary and reasonably available services capable of correcting her parental deficiencies in the near future were offered or provided to her as required by RCW 13.34.180(1)(d). She

---

[1] The petition for termination of parent-child relationship refers to the appellant as "Sonia A. Orozco-Salgado." Appellant's counsel refers to her as "Orozco." Hereafter, we also refer to the appellant as Orozco.

further claims that the trial court erred in concluding that termination of her parental rights was in the best interest of the twins. Because the State satisfied all necessary elements of RCW 13.34.180(1) and termination was in the best interest of J.O. and J.O., we affirm the order of termination.[2]

## FACTS

J.O. and J.O. were born on October 17, 2013. Orozco is the mother of two older girls and a son born on December 6, 2014, but her parental rights to those children are not at issue in this proceeding.[3] At birth, the twins and Orozco tested positive for amphetamines. Orozco worked with social workers at the Department of Social and Health Services to create a safety plan which involved her living with family members and working with IFPS Homebuilders, Family Voluntary Services, and a public health nurse. Orozco agreed to submit to random urinalysis (UA) testing, and J.O. and J.O. were released to her custody on October 29, 2013.

The following day, the Department was unable to locate Orozco after she failed to arrive at the family members' home with the twins. On October 31, 2013, the Department located Orozco and placed the twins in the Pediatric Interim Care Center. The Department filed a dependency petition on November 5, 2013, and an initial shelter care hearing was held that day. The twins were placed with adults recommended by Orozco, where they remained until February

---

[2] The parental rights of J.O. and J.O.'s possible fathers, Juan Ayala and Jose Avila, were previously terminated, and they are not parties to this appeal.

[3] The trial court's factual findings, recited in the facts section of this opinion, are unchallenged findings, which are verities on appeal. In re Interest of J.F., 109 Wn. App. 718, 722, 37 P.3d 1227 (2001).

2

12, 2014, when they were moved to licensed foster care after one twin suffered multiple, apparently nonaccidental, injuries.

At the initial shelter care hearing, the Department recommended services for Orozco, including a mental health evaluation, a drug/alcohol evaluation, a parenting evaluation, and random UA testing twice a week. Orozco indicated that she agreed with the recommendations. She admitted she had a substance abuse problem. The Department's social worker told Orozco how to access services and followed up with letters containing service information, but Orozco failed to participate in any services except one random UA test. Orozco maintained only minimal contact with the Department, she was periodically incarcerated, and the Department was often unable to locate her. Although Orozco was granted supervised visitation four times per week, she visited sporadically, with only one visit between February 12, 2014, and May 9, 2014.

On May 9, 2014, a dependency and dispositional order was entered. The order recognized that Orozco had yet to meaningfully participate in any services. It required Orozco to establish paternity, complete a drug/alcohol evaluation, follow any recommendations for substance abuse-related treatment, participate in random UA testing three times per week, complete a parenting assessment, and follow all recommendations from that assessment. Orozco was responsible for initiating weekly supervised visits with the twins. The first dependency review hearing order indicates that as of July 11, 2014, Orozco had temporarily moved to Texas and then returned to Washington, she had not visited the twins, and she

had failed to comply with court ordered requirements except for three random UA tests.

The Department attempted to provide services for Orozco. Between November 25, 2013, and February 28, 2014, the Department's social worker Megan Hall, formerly Megan Gribbin, mailed or hand delivered three service referral letters to Orozco, providing information about drug and alcohol assessment and treatment at Sound Mental Health, Recovery Centers of King County (RCKC), and New Traditions in Seattle. On February 3, 2014, Hall sent a referral letter to RCKC outlining Orozco's need for an assessment and treatment and providing Orozco's contact information. On August 25, and October 13, 2014, Hall sent additional service referral letters to Orozco for drug and alcohol evaluation at RCKC. On December 10, 2014, Hall sent a referral to New Traditions for a drug/alcohol evaluation. Hall also met frequently with Orozco to discuss her progress.

Social worker Sherrie Monett was assigned to Orozco's case in April 2015, and she had frequent meetings with Orozco to discuss her progress. On April 7, June 1, and June 10, 2015, Monett provided Orozco with service referral letters providing contact information for the counselor at New Traditions so Orozco could begin treatment there. Orozco did not engage in these services.

To assist Orozco in complying with court-ordered thrice weekly random UA testing, Department social workers supplied her with nine service letters between November 2013 and June 10, 2015. The Department submitted referrals to UA testing provider US Healthworks in Kent on January 8, February

4

25, June 23, and August 21, 2014. To accommodate Orozco's work hours, the Department made a referral to Intercept Associates on October 1, 2014. Orozco was unable or unwilling to complete 90 days of clean, consistent UA testing.

To assist Orozco in complying with court-ordered parenting assessment, the Department's social workers referred her to Working Choices, but Orozco failed to respond so her case was closed. Orozco was referred to Kent Youth and Family Services/Incredible Years for parenting classes but attended only one session.

While not court-ordered to do so, the Department's social workers provided Orozco with information about individual mental health counseling, but Orozco did not participate. The Department also offered and provided Orozco with community resources for housing and bus tickets for transportation assistance.

Interim orders dated December 5, 2014, and May 1, 2015, indicate that Orozco remained mostly out of contact with the Department. In December 2014, Orozco was in California awaiting the birth of her younger son.

Orozco completed a second drug evaluation at New Traditions on September 8, 2015. The evaluator recommended 16 weeks of intensive outpatient treatment followed by inpatient treatment if Orozco made progress in outpatient treatment, but Orozco failed to follow this recommendation.

As of October 23, 2015, Orozco remained noncompliant with court-ordered services except for the September 8 substance abuse assessment. She

had visited the twins only sporadically and numerous visit supervision contracts had been cancelled because Orozco had failed to appear.

The Department filed a petition to terminate Orozco's parental rights to J.O. and J.O. on August 5, 2015. Orozco filed an answer on October 22, 2015, and the termination hearing took place from February 22 through February 24, 2016. Social workers Monett and Hall testified along with the guardian ad litem, Pauline Duke, and Orozco. The trial court admitted 38 exhibits offered by the State and 2 offered by Orozco. At the beginning of the termination hearing, Orozco moved for an order requiring the Department to pay for inpatient treatment. The trial court denied the motion, finding that Orozco had failed to comply with the requirements set forth in the dispositional order. The trial court noted that the interim review orders showed that the Department had offered and provided the recommended services, but Orozco had not engaged in the offered treatment. The court rejected Orozco's claim that merely because she believed inpatient treatment to be in her best interest, the trial court must order it.

On February 26, 2016, the trial court entered findings of fact and conclusions of law. Finding that the Department had satisfied all of the criteria set forth in RCW 13.34.180(1) and that termination was in the best interest of each boy, the trial court terminated Orozco's parental rights. Orozco appeals.

ANALYSIS

When deciding whether to terminate a parent's rights, Washington courts use a two-step process. In re Welfare of A.B., 168 Wn.2d 908, 911, 232 P.3d

1104 (2010). First, the State must prove the requirements set forth in RCW

13.34.180(1) by clear, cogent, and convincing evidence:

> (a) That the child has been found to be a dependent child;
> (b) That the court has entered a dispositional order pursuant to RCW 13.34.130;
> (c) That the child has been removed . . . from the custody of the parent for a period of at least six months pursuant to a finding of dependency;
> (d) That the services ordered under RCW 13.34.136 have been expressly and understandably offered or provided and all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been expressly and understandably offered or provided;
> (e) That there is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future. . . . [and]
>
> . . . .
>
> (f) That the continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home.

RCW 13.34.180(1). If the State meets its burden under RCW 13.34.180(1), it

must then prove by a preponderance of the evidence that termination is in the

"best interests" of the child. RCW 13.34.190(1).

Once the trial court weighs the evidence and enters findings of fact and

conclusions of law, this court's review is limited to whether those findings of fact

are supported by substantial evidence and whether they support the trial court's

conclusions of law. In re Dependency of K.S.C., 137 Wn.2d 918, 925, 976 P.2d

113 (1999). In determining whether substantial evidence supports the trial

court's findings, this court will not weigh the evidence or make credibility

determinations. In re Welfare of C.B., 134 Wn. App. 942, 953, 143 P.3d 846

(2006). Unchallenged findings of fact are verities on appeal. In re Interest of J.F., 109 Wn. App. 718, 722, 37 P.3d 1227 (2001).

Services Offered or Provided

Orozco contends that the Department failed to prove by clear, cogent, and convincing evidence that it offered or provided all necessary services that were reasonably available and capable of correcting her parental deficiencies as required by RCW 13.34.180(1)(d). Specifically, she argues that the Department should have provided inpatient substance abuse treatment. We disagree.

A service is necessary within the meaning of RCW 13.34.180(d)(1) "if it is needed to address a condition that precludes reunification of the parent and child." In re Dependency of A.M.M., 182 Wn. App. 776, 793, 332 P.3d 500 (2014); see RCW 13.34.136(2)(b)(i) ("services" are offered to parents "to enable them to resume custody"). The services offered must be individually tailored to a parent's specific needs. In re Dependency of D.A., 124 Wn. App. 644, 651, 102 P.3d 847 (2004), review denied, 154 Wn.2d 1030 (2005). However, if the "parent is unwilling or unable to make use of the services provided," the Department is not required to offer or provide services that "might have been helpful." In re Dependency of T.R., 108 Wn. App. 149, 163, 29 P.3d 1275 (2001).

Orozco does not challenge the trial court's factual findings that the Department repeatedly referred her to drug/alcohol evaluation and treatment but she failed to participate in the recommended treatment. She does not challenge findings that can be paraphrased as follows:

8

> 2.25 She completed a substance abuse assessment at New Traditions in September 2015, the assessor recommended intensive outpatient treatment, and Orozco failed to complete that treatment.
>
> . . . .
>
> 2.31 Her testimony repeatedly lacked credibility; she claimed she did not receive the service letters but then admitted she had, and she claimed that the Department had told her she had to pay for outpatient treatment only to then admit that she had been told this service was free.
>
> . . . .
>
> 2.33 Throughout the twins' dependency, she "demonstrated an unwillingness to participate in and/or successfully complete series offered to correct parental deficiencies."

Even though the Department must provide necessary services to assist a parent in overcoming parental deficiencies, "where the Department offers services but the parent refuses to participate, RCW 13.34.180(1)(d) is satisfied." In re Welfare of M.R.H., 145 Wn. App. 10, 26, 188 P.3d 510, review denied, 165 Wn.2d 1009 (2008), cert. denied, 556 U.S. 1158 (2009). On September 8, 2015, a New Traditions professional evaluated Orozco and recommended outpatient treatment with the possibility of inpatient treatment. Orozco admittedly failed to avail herself of the recommended treatment, so "RCW 13.34.180(1)(d) is satisfied." M.R.H., 145 Wn. App. at 26.

Even though Orozco failed to participate in the treatment recommended and offered, she claims that the Department's efforts were inadequate because inpatient services would have been more beneficial. Orozco contends that her "belief" that inpatient services would be most beneficial and her testimony that she was willing to enter such treatment compelled a finding that inpatient services were necessary and required. Because Orozco failed to participate in

the treatment recommended and offered, the Department was not required to offer additional services. T.R., 108 Wn. App. at 163. Moreover, because Orozco's testimony was admittedly inconsistent and contradictory, the trial court was justified in disbelieving her assertions regarding the need for inpatient treatment and her willingness to undergo such treatment.

Orzoco's contention that the Department was required to provide inpatient services is not supported by In re Dependency of T.L.G., 126 Wn. App. 181, 108 P.3d 156 (2005), and In re Dependency of H.W., 92 Wn. App. 420, 961 P.2d 963, 969 P.2d 1082 (1998). In T.L.G., the Department did not identify the parental deficiencies to be corrected, and despite the parents' known depression and anxiety issues, no mental health services were provided. 126 Wn. App. at 198-200. In H.W., evidence showed that the mother had a developmental disability requiring a specific kind of treatment that the Department failed to offer. 92 Wn. App. at 426-29. Here, the Department offered the very services recommended by the drug/alcohol evaluation and thus offered services tailored to Orozco's identified deficiency of substance abuse.

Finally, Orozco argues that the Department erred because it refused to pay for inpatient treatment without notifying the trial court that these services were unavailable as required by statute. See RCW 13.34.025(2)(c) and RCW 13.34.136(2)(b)(vii). We disagree. RCW 13.34.025(2)(c) requires notice to the court when a parent is unable to engage in court ordered services because of an inability to access those services. RCW 13.34.136(2)(b)(vii) requires the Department to notify the trial court if a reasonable service is unavailable. There

10

is no evidence that the outpatient services recommended by New Traditions were unavailable or that the Department was unwilling to pay for these services. To the contrary, the recommended services were offered to Orozco, but she failed to participate.

Substantial evidence supports the trial court's finding that the Department offered or provided all necessary and appropriate services to address Orozco's substance abuse problems as required by RCW 13.34.180(d)(1).

Best interests of the twin boys

Orozco contends that the trial court erred in finding that termination of her parental rights was in the best interests of the twins, as required by RCW 13.34.190(1). She argues that because the Department failed to establish the elements required by RCW 13.34.180(1), the trial court's best interests determination was premature. We disagree.

The determination of whether termination of parental rights is in the child's best interests is a fact specific inquiry. In re Welfare of Aschauer, 93 Wn.2d 689, 695, 611 P.2d 1245 (1980). We afford a trial court broad discretion in making the "best interests" determination and give its decision great deference on review. In re Welfare of Young, 24 Wn. App. 392, 395, 600 P.2d 1312 (1979), review denied, 93 Wn.2d 1005 (1980).

Orozco does not challenge the trial court's findings on any of the requirements set forth in RCW 13.34.180(1), except (1)(d). In addition, unchallenged findings establish that (1) Orozco was inconsistent in visiting the twins; (2) she is currently unfit; (3) even if she began participating in services at

11

the time of the termination hearing, it would be at least 9 to 10 months before any transition to her care could even be considered, and that is too long for the twins to wait when 28 months have already passed; (4) Orozco has made no progress, and "there is very little likelihood that progress will occur in the near future"; and (5) the twins are adoptable and have prospects for adoption that would be at risk if placed in Orozco's care.

In light of these unchallenged findings and the evidence showing that the Department satisfied the requirements of RCW 13.34.180(1)(d), a preponderance of the evidence supports the trial court's finding that termination of Orozco's parental rights is in the best interest of each boy.

We affirm the trial court's order terminating Orozco's parental rights.

Becker, J.

WE CONCUR:

Cox, J.